1    Samuel M. Lasser (SBN – 252754)
     slasser@edelson.com
2    EDELSON PC
     1934 Divisadero Street
3    San Francisco, California 94115
     Tel: 415.994.9930
4    Fax: 415.776.8047

5    Rafey S. Balabanian*
     rbalabanian@edelson.com
6    Benjamin H. Richman*
     brichman@edelson.com
7    Amir C. Missaghi*
     amissaghi@edelson.com
8    EDELSON PC
     350 North LaSalle Street, Suite 1300
9    Chicago, Illinois 60654
     Tel: 312.589.6370
10   Fax: 312.589.6378

11   *_Pro hac vice_ admission to be sought

12   _Attorneys for Plaintiff and the Putative Class_

13              **IN THE UNITED STATES DISTRICT COURT**

14            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15                       **SAN JOSE DIVISION**

| | |
|---|---|
| 16   JASON DOERRER, individually and on behalf of all others similarly situated, | Case No. |
| 17 | |
| | _Plaintiff,_ | **COMPLAINT FOR:** |
| 18 | |
| | _v._ | 1.   **Violations of Cal. Civ. Code §§ 1750 _et seq._;** |
| 19 | | 2.   **Violations of Cal. Bus. & Prof. Code §§ 17200, _et seq._;** |
| 20   G.B.T. INC., a California corporation, GIGABYTE GLOBAL BUSINESS CORPORATION, a California corporation, and NVIDIA CORPORATION, a Delaware corporation, | 3.   **Violations of Cal. Bus. & Prof. Code §§ 17500, _et seq._;** |
| 21 | | 4.   **Fraudulent Inducement;** |
| 22 | | 5.   **Breach of Express Warranties; and** |
| | _Defendants._ | 6.   **Unjust Enrichment.** |
| 23 | | **DEMAND FOR JURY TRIAL** |
| 24 | | **CLASS ACTION** |

Plaintiff Jason Doerrer ("Plaintiff" or "Doerrer") brings this class action complaint ("Complaint") against Defendants G.B.T. Inc., Gigabyte Global Business Corporation (together, "Gigabyte") and NVIDIA Corporation ("Nvidia") (collectively, "Defendants")[1] based on the deceptive marketing of their GTX 970 computer graphics card. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Nvidia is the leading developer and designer of computer graphics technology. Gigabyte is the U.S. presence of Gigabyte Technology LTD., a manufacturer and distributor of computer graphics cards built with Nvidia's graphics technology. Together, Nvidia and Gigabyte devised a marketing scheme for their GTX 970 graphics cards that misrepresented their true features and specifications.

2. According to Defendants' jointly created marketing materials, their GTX 970 graphics cards contain "4GB" (*i.e.*, four gigabytes) of "video memory." Video memory, along with the "GPU" (*i.e.*, the graphics processing unit), is a primary driver of a graphics card's performance. As such, video memory is known to manufacturers, distributors, and consumers alike to be an indicator of relative performance across different graphics cards. All else being equal, a graphics card with a larger amount of video memory will perform better than a card with less. As a result, designers, manufacturers, and distributors charge (and consumers pay) a premium for graphics cards with larger amounts of video memory.

3. Understanding the benefits of advertising their graphics cards as having large amounts of memory, Defendants centered their marketing on the amount of video memory their new GTX 970 graphics card contained. Indeed, Defendants stated that their GTX 970 graphics cards had "4GB" of "GDDR5" video memory and referenced the "4GB" and

---

[1] Where referring to "Defendants" collectively, Plaintiff alleges the same facts against Defendants G.B.T. Inc., Gigabyte Global Business Corporation, and NVIDIA Corporation unless otherwise specified. As such, every reference to "Defendants" shall be construed to include all Defendants jointly and acting in concert, unless a particular Defendant is identified by name.

"GDDR5" claims in online retail stores, on the products' packaging, and in the products' model numbers.

4.   However, several months after the GTX 970 was released (but after thousands of the graphics cards had been sold) it was revealed that the graphics cards did not actually have "4GB" (*i.e.*, four gigabytes) of "GDDR5" video memory as advertised. Instead, Defendants' GTX 970 graphics cards contain only 3GB (*i.e.*, three gigabytes) of video memory of the type advertised and another 1GB (*i.e.*, one gigabyte) of salvaged video memory of severely degraded performance.

5.   Average consumers in the market for PC graphics cards lack the requisite technical expertise to understand the functionality of Defendants' GTX 970 technology, and they trust Defendants to convey accurate specifications regarding their graphics cards. Because Defendants did not convey accurate specifications, thousands of consumers have been misled into buying graphics cards that do not conform to what was advertised.

6.   Accordingly, this putative class action lawsuit seeks (i) to prevent Defendants from continuing to misrepresent the specifications of their GTX 970 graphics cards, and (ii) actual damages for those deceived into purchasing the products under false pretenses.

**PARTIES**

7.   Plaintiff Jason Doerrer is a natural person and citizen of the State of Missouri.

8.   Defendant G.B.T. INC., is a corporation incorporated in and existing under the laws of the State of California with its principal place of business located at 17358 Railroad Street, City of Industry, California 91748. G.B.T. INC., does business throughout the United States and the State of California, including in this District.

9.   Defendant Gigabyte Global Business Corporation is a corporation incorporated in and existing under the laws of the State of California with its principal place of business located at 17358 Railroad Street, City of Industry, California 91748. Gigabyte Global Business Corporation does business throughout the United States and the State of California, including in this District.

10.   Defendant NVIDIA Corporation is a corporation incorporated in and existing

under the laws of Delaware with its principal place of business located at 2701 San Tomas Expressway, Santa Clara, California 95050. NVIDIA Corporation does business throughout the United States and the State of California, including in this District.

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

12.     This Court has personal jurisdiction over Defendants because Defendants conduct business in California, are headquartered in California, and because the events giving rise to this lawsuit occurred, in substantial part, in California.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Nvidia resides in this District and all Defendants conduct significant business here. Venue is additionally proper because Defendant Nvidia maintains its headquarters and principal place of business in this District.

## INTRADISTRICT ASSIGNMENT

14.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division.

## FACTUAL BACKGROUND

I.     __A Brief Overview of Defendants and Their GTX 970 Graphics Cards.__

   *A.*     *Defendants Nvidia and Gigabyte partner to develop and advertise PC graphics cards.*

15.     Nvidia was founded in 1993 and is the leading developer of discreet graphics cards for personal computers (*i.e.*, graphics cards that are not integrated into a PC), controlling almost 80% of that market.[2]

16.     Defendants G.B.T. INC., and Gigabyte Global Business Corporation are the

---

[2]     *Is NVIDIA Becoming the Intel of Graphics Cards? (AMD, NVDA)*, www.fool.com/investing/general/2015/02/27/is-nvidia-becoming-the-intel-of-graphics-cards.aspx (last visited Mar. 19, 2015).

1    U.S. presence of Giga-Byte Technology Co., Ltd—a worldwide leader in the manufacturing

2    and distribution of PCs and computer components such as computer motherboards and

3    graphics cards.

4         17.    In 2014, Defendant Nvidia publicly announced its GTX 970 graphics card

5    technology. To build and distribute graphics cards using the GTX 970 technology, Nvidia

6    partnered with several manufacturers and distributors, including Gigabyte.[3] And, on

7    September 19, 2014, Gigabyte announced its line of graphics cards built around the GTX 970

8    technology, and began marketing the Gigabyte GTX 970 graphics cards jointly with

9    Defendant Nvidia.[4]

10        18.    Together, Gigabyte and Nvidia agreed to deliver a clear message to

11   consumers: that the GTX 970 had "4GB" of "GDDR5" video memory.

12        B.    *Graphics cards' video memory is advertised as increasing performance*

13        19.    A graphics card is, in effect, a specialized personal computer in its own right.

14   It has a processor (known as the GPU), input and output interfaces, and dedicated video

15   memory. As technology advances, graphics card designers and manufacturers, such as Nvidia

16   and Gigabyte, refine the components in the hopes of advancing video fidelity. A new

17   generation of graphics cards, for example, might have a GPU that operates faster, more

18   robust input and output interfaces, and additional memory that operates at faster speeds.

19        20.    Relevant here, video memory size is measured in units of gigabytes, while

20   video memory speed is measured, in part, by its interface type and the number of gigabytes

21   that can be transferred in one second. Large amounts of video memory in graphics cards is

22   [3]    *NVIDIA Authorized Board Partners | NVIDIA*, www.nvidia.com/object/
23   pf_boardpartners.html (last visited Mar. 19, 2015) (stating that "The NVIDIA Authorized
     Board Partner Program ensures an exceptional customer experience when purchasing
24   graphics cards and motherboards manufactured by partners that make use of NVIDIA's latest
     technologies" and that "NVIDIA has worked closely with Authorized Board Partners to
25   ensure they meet and maintain the strict requirements listed above," and listing Gigabyte as a
     an Authorized Board Partner).
26   [4]    *GIGABYTE Unveils GeForce® GTX 980 and GTX 970 G1 Gaming Graphics Card*,
27   http://b2b.gigabyte.com/press-center/news-page.aspx?nid=1317 (last visited Mar. 19, 2015).

28

necessary to allow consumers to play "next-gen[eration] games" "at the highest settings."[5]

21.     Similarly, the speed of the memory interface directly affects graphics card performance. Interface speed dictates, for instance, how long it will take video memory to load or unload new graphical information. The current standard for high-end graphics cards is known as "GDDR5" memory. Under Defendants' implementation of this interface standard, the video memory transfers information at speeds of 224 gigabytes per second.[6]

22.     On its website, Defendant Nvidia wrote a primer on what video memory is and why it's important:

> "The **memory type** used by graphics cards is different from the sort you'd find sticking out from your motherboard. It's soldered permanently in place, wired directly into the GPU, and runs at a very high frequency to move a lot of data back and forth during gameplay (also known as "bandwidth"). There are a few varieties of graphics memory, the most modern being GDDR5, with GDDR4 and GDDR3 being older though still occasionally used. The thing to be aware of is how the clock speed for memory is advertised, because all types of memory read or write data twice per clock cycle, meaning their clock speed can be written as the "nominal speed" (what the memory chips actually run at) or as the "effective speed" (which is just the nominal speed times two).
>
> …
>
> Regardless of their type, the memory chips found on a graphics card connect to the GPU through a series of pathways. The total number of these pathways is called the **memory bus width**, which is expressed as "n-bit." (e.g. 192-bit, 256-bit, 384-bit). Higher numbers indicate a wider memory bus (more pathways), which in turn means our memory chips can theoretically move larger amounts of data at once.
>
> A graphics card's **memory capacity** has can either be described in Megabytes (MB, where 1 MB = 1024 Kilobytes), or Gigabytes (GB, where 1 GB = 1024 Megabytes). Something that should be immediately stressed is that having more memory on your graphics card does not automatically equate to better performance. This isn't to downplay the importance of it at all, as graphics memory stores a lot of crucial information that can indeed take up a lot of space, especially when playing at high resolutions or across multiple monitors, and performance can suffer greatly if we don't have enough space to hold all of it when we need to. The thing is, once there is enough free space for the GPU to do its work, no amount of extra free space will improve our performance. Having a bit more than you need will be useful as games

---

[5]     *Introduction to PC Components | GeForce*, http://www.geforce.com/whats-new/guides/introduction-to-pc-components#2 (last visited Mar. 19, 2015).

[6]     *GeForce GTX 970 | Specifications | GeForce*, http://www.geforce.com/hardware/desktop-gpus/geforce-gtx-970/specifications (last visited Mar. 19, 2015).

become more detailed or after you upgrade to a monitor with a higher resolution, but don't purchase a graphics card solely for this purpose or explicitly because it has more memory. If you're in need of a graphics card with a large amount of memory, several manufacturing partners are offering 4 GB [graphics cards] … "[7]

23.     Nvidia published this article knowing that consumers in the market for high-end graphics cards specifically seek out cards with a greater amount of high-speed video memory and are willing to pay a premium for those specifications. As such, graphics card designers, manufacturers, and distributors, such as Nvidia and Gigabyte, have tailored their graphic cards' advertising to showcase video memory specifications to allow consumers to compare graphics cards across different makes and models.

C.     *Defendants advertise that the GTX 970 graphics cards have "4GB" of "GDDR5" video memory*

24.     Defendants have marketed and sold their GTX 970 graphics cards online at retailers such as Newegg.com and Amazon.com, as well as traditional brick-and-mortar retailers, including Microcenter. At the online shops, Defendants make several representations that the GTX 970 graphics cards have "4GB" of video memory. And, relevant to both online and brick-and-mortar stores, Defendant Gigabyte, following Defendant Nvidia's instructions, printed similar representations on the graphics cards' packaging.

25.     On their individual websites, Defendants both represent to consumers that the GTX 970 graphics cards have "4GB" of "GDDR5" video memory. For example, for its Gigabyte GV-N970WF3OC-4GD graphics card, Defendant Gigabyte shows the following:



(**Figure 1**, showing representations from Defendant Gigabyte's website.)[8]

[7]     *Introduction to PC Components | GeForce*, http://www.geforce.com/whats-new/guides/introduction-to-pc-components#2 (last visited Mar. 19, 2015) (emphasis in original).
[8]     *GIGABYTE - Graphics Card - NVIDIA - PCI Express Solution - GeForce 900 Series - GV-N970WF3-4GD*, http://www.gigabyte.com/products/product-page.aspx?pid=5352 (last visited Mar. 19, 2015).

26. Defendant Nvidia makes similar representations on its website:



(**Figure 2**, showing representations from Defendant Nvidia's website.)[9]

27. For their online retailers, Defendants created and disseminated myriad representations that the GTX 970 graphics cards have "4GB" of "GDDR5" video memory. For example, Defendants provided NewEgg.com and Amazon.com product page descriptions that are titled, "GIGABYTE GV-N970WF3OC-4GD GeForce GTX 970 4GB 256-Bit GDDR5" and "Gigabyte GeForce GTX 970 Overclocked GDDR5 Pcie Video Graphics Card, 4GB."

**GIGABYTE GV-N970WF3OC-4GD GeForce GTX 970 4GB 256-Bit GDDR5 PCI Express 3.0 HDCP Ready G-SYNC Support Video Card**

(**Figure 3**, showing a page description from Newegg.com)

Gigabyte GeForce GTX 970 Overclocked GDDR5 Pcie Video Graphics Card, 4GB
by Gigabyte

(**Figure 4**, showing a page description from Amazon.com)

28. Defendants also provide the text shown in Figure 5, below, to online retailers. Here, one of the first thing Defendants highlight about the GTX 970 graphics cards is the cards' amount and type of video memory:

---

[9] *GeForce GTX 970 | Specifications | GeForce*, http://www.geforce.com/hardware/desktop-gpus/geforce-gtx-970/specifications (last visited Mar. 19, 2015).



**GV-N970WF3OC-4GD**
**WINDFORCE 3X Gaming Graphics Card**

- WINDFORCE 3X Cooling System
- Flex Display Technology(patent-pending)
- Powered by NVIDIA GeForce GTX 970 GPU
- Integrated with industry's best 4GB GDDR5 memory 256-bit memory interface
- Features Dual-link DVI-I / DVI-D / HDMI / DisplayPort*3
- BASE: 1114MHz / BOOST: 1253MHz
- System power supply requirement: 550W (with one 6-pin and one 8-pin external power connectors)

(**Figure 5**, showing Defendants' representations from Newegg.com)

29.  And for brick-and-mortar stores, Defendants caused the GTX 970 graphics cards' packaging to prominently display that the graphics cards contain "4GB" of "GDDR5" video memory. *See* Figure 6. Similarly, Defendants placed stickers on the products' packaging that identifies the GTX 970 graphics cards as having "4GB GDDR5/256 bit" video memory. *See id.*

(**Figure 6.**)

30.  Taken together, the marketing and advertisements for the GTX 970 graphics cards—including those appearing on consumer retail websites, such as NewEgg.com and

Amazon.com—make clear that the GTX 970 graphics cards have "4GB" (*i.e.*, 4 gigabytes) of video memory.

## II. Defendants' GTX 970 Graphics Cards do not Conform to the Advertised Specifications.

31.     As introduced above, Defendants represented to consumers that their GTX 970 graphics cards had "4GB" of "GDDR5" video memory. A closer examination, however, reveals that the video cards only have 3GB gigabytes of true GDDR5 video memory.

*A.      Industry experts discover an anomaly with GTX 970 graphics cards.*

32.     In January of 2015, several websites dedicated to the technical analysis of consumer computer equipment noticed performance variations with certain GTX 970 graphics cards.[10] These websites, and their readers, investigated the anomaly and discovered that GTX 970 graphics cards were not utilizing all of the advertised four gigabytes of video memory. The investigators, however, were unable to discover a cause—some thought that the anomaly was simply due to a hardware or software bug.

33.     Shortly after the anomaly was discovered, Nvidia's agents divulged information about the GTX 970's electronic architecture and revealed that the anomaly was not a bug but a feature. Specifically, Nvidia's agents explained that the manufacturing process for video memory typically results in a certain portion of manufactured video memory being faulty. Manufacturing memory for a graphics card with four gigabytes of video memory, for instance, would result in some cards that were operational but with only three gigabytes of useable memory and one gigabyte of faulty, unusable memory.

34.     Prior to the GTX 970, Nvidia would have disabled the one-gigabyte of faulty memory but would have nevertheless released the card for sale. In that case, though, Nvidia would have accurately advertised and sold the graphics card as having only 3GB, or three gigabytes, of video memory, not 4GB.

---

[10]     *See e.g.*, *Does the GeForce GTX 970 have a memory allocation bug ? (update 3)*, http://www.guru3d.com/news-story/does-the-geforce-gtx-970-have-a-memory-allocation-bug.html (last visited Mar. 19, 2015), *Nvidia admits, explains GeForce GTX 970 memory allocation issue - The Tech Report*, http://techreport.com/news/27721/nvidia-admits-explains-geforce-gtx-970-memory-allocation-issue (last visited Mar. 19, 2015).

35.     With the GTX 970, Nvidia's goal was to salvage—rather than disable—the faulty memory chips (using new "linking" technologies) and then sell the new graphics card as having a full 4GB of video memory. But while the GTX 970 cards *technically* had 4GB of video memory,[11] Nvidia knew that, by design, the salvaged memory would perform at speeds vastly slower (as much as 87% slower, in fact) than the non-salvaged, 3GB of video memory.

36.     Rather than disclose this material limitation, however, Nvidia and its partners, including Gigabyte, decided to market the GTX 970 video cards as featuring pure, unrestricted 4GB of GDDR5 video memory. This decision allowed the GTX 970 video cards to command a premium price in-line with the advertised 4GB of memory, and compete with other 4GB graphics cards in the market. Unfortunately, Nvidia and its partners never disclosed the degraded performance and limitations of the salvaged memory. As a result, thousands of consumers purchased cards of diminished specifications and performance.

B.      *Defendants confirm that the graphics cards don't come with 4GB.*

37.     On February 24, 2015, Defendant Nvidia issued a statement on its blog.nvidia.com website where it confirmed that the "4GB" was misleading. In that statement, Nvidia began by again stating that the GTX 970 graphics cards have "4GB" of video memory, but then added that "the upper 512MB of the additional 1GB is segmented and has reduced bandwidth."[12]

38.     In laymen's terms, Nvidia stated that GTX 970 graphics cards have two *different types* of memory that, when added together, are technically equal to four gigabytes. Three gigabytes of the GTX 970 graphics cards' memory are capable of performing at the advertised speeds of 224 gigabytes per second. The remaining one gigabyte of memory, however, operates at a fraction of that speed: 0.5 gigabyte of memory performs close to the advertised speeds in limited circumstances, but the other 0.5 gigabyte operates at an approximate speed of 1/8 of what was advertised, 28 gigabytes per second.

[11]     Technically speaking, the 3GB graphics cards described in paragraph 34, *supra*, also had 4GB of video memory.

[12]     *Jen-Hsun On GeForce GTX 970 | The Official NVIDIA Blog*, http://blogs.nvidia.com/blog/2015/02/24/gtx-970/ (last visited Mar. 19, 2015).

39.     Nvidia continued its statement, saying:

"Unfortunately, we failed to communicate [the usage of two different types of memory] internally to our marketing team, and externally to reviewers at launch.

…

some [consumers] were disappointed that we didn't better describe the segmented nature of the architecture for that last 1GB of memory.

This is understandable. But, let me be clear: Our only intention was to create the best GPU for you. We wanted GTX 970 to have 4GB of memory, as games are using more memory than ever.

…

This new feature of Maxwell should have been clearly detailed from the beginning.

We won't let this happen again. We'll do a better job next time."[13]

40.     As such, Defendants' GTX 970 graphics cards do not contain the 4GB of GDDR5 video memory as advertised. Yet, Defendants centered their marketing and advertising on the "4GB" of "GDDR5" video memory to deceive consumers into purchasing their GTX 970 graphics cards. Defendants knew that while average consumers are unable to discern the falsehood of their representations at the time of sale, that same target market *would* desire a graphics card with 4GB of GDDR5 video memory. To date, thousands of consumers have been deceived by Defendants' marketing and purchased GTX 970 graphics cards believing Defendants' representations to be true.

### III.     Plaintiff Doerrer's Experience with his GTX 970 Graphics Card.

41.     In or around January 2015, Plaintiff Doerrer purchased a GTX 970 graphics card, model number Gigabyte GV-N970WF3OC-4GD, for $339.99 from the online retailer NewEgg.com.

42.     Before purchasing the graphics card (on the same day, in or around January 2015), Plaintiff Doerrer saw Defendants' representations on Nvidia.com[14] and Newegg.com

[13]     *Jen-Hsun On GeForce GTX 970 | The Official NVIDIA Blog*, http://blogs.nvidia.com/blog/2015/02/24/gtx-970/ (last visited Mar. 19, 2015).
[14]     On its website, Nvidia has "legal notices" at http://www.nvidia.com/object/legal_info.html where it states that "Any claim … shall be governed by the internal substantive laws of the State of California." *See* http://www.nvidia.com/object/legal_info.html (last visited Mar. 19, 2015).

1  claiming that the graphics card had "4GB 256-Bit GDDR5" memory. The representations he

2  saw were created by Defendants and provided by them to Newegg.com. Specifically,

3  Plaintiff Doerrer saw representations on Newegg.com that the GTX 970 graphics card was

4  "Integrated with industry's best 4GB GDDR5 memory 256-bit memory interface." Likewise,

5  Plaintiff saw the "GTX 970 Memory Specs" on Nvidia.com. The representations Plaintiff

6  saw were identical to the reproductions in Figures 1–3, and 5.

7       43.    Moreover, when he received the Gigabyte GV-N970WF3OC-4GD graphics

8  card in the mail, Plaintiff Doerrer read the representations that Defendants jointly created and

9  placed on the card's packaging. Specifically, Plaintiff Doerrer read Defendants'

10  representations that the GTX 970 graphics card had "4GB" of "GDDR5" memory, which

11  was identical to the reproduction in Figure 6.

12       44.    Unfortunately, and as described herein, the graphics card Plaintiff purchased

13  did not have the specifications Defendants' advertised. Specifically, the Gigabyte GV-

14  N970WF3OC-4GD graphics card did not 4 gigabytes (*i.e.*, "4GB") of GDDR5 memory at

15  256-bit memory interface. Instead, the card had only 3 gigabytes (*i.e.*, "3GB") of GDDR5

16  memory of the advertised interface type.

17       45.    Plaintiff Doerrer reasonably relied upon Defendants' express representations

18  about the GTX 970 graphics card's specifications in choosing to purchase that product—

19  namely, that the GTX 970 graphics card had 4 gigabytes (*i.e.*, "4GB") of video memory.

20  Those representations were material to his purchase: without them, Plaintiff Doerrer would

21  either have not purchased the Gigabyte GV-N970WF3OC-4GD or he would have paid less

22  money for it.

23       46.    Accordingly, Plaintiff has suffered damages as the result of Defendants'

24  misrepresentations in the form of money paid to purchase the GTX 970 graphics card. In

25  addition, Plaintiff could not return his purchased GTX 970 for a refund from Newegg.com

26  because the retailer instituted a "Replacement Only Return Policy" for this product, making it

27

28

1  "non-refundable."[15]

2  47.  Plaintiff is likely to purchase graphics cards with Nvidia technology in the

3  future and requires an injunction requiring Nvidia and Gigabyte to truthfully advertise their

4  graphics cards' specifications in the future. Defendant Nvidia is one of only two major

5  companies that provide discreet graphics card technology for consumers and commands

6  almost 80% of the market.[16] Moreover, Defendant Nvidia spends tens of millions of dollars

7  per year advertising and marketing its graphics card technology.[17] As such, Plaintiff will be

8  exposed to Nvidia's deceptive marketing in the future and is effectively left with no other

9  option but to purchase products from Nvidia.

10  48.  Furthermore, Plaintiff Doerrer would purchase Defendants' GTX 970 in the

11  future if it were accurately advertised and priced commensurate with its true value.

12  **CLASS ALLEGATIONS**

13  49.  **Class Definition:** Plaintiff Doerrer brings this action pursuant to Federal Rule

14  of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of similarly

15  situated individuals defined as follows:

16  All individuals and entities in the United States that purchased GV-N970IX-4GD,
     GV-N970WF3-4GD, GV-N970IXOC-4GD, GV-N970WF3OC-4GD, and/or GV-
17  N970G1 GAMING-4GD GTX 970 graphics cards.[18]

18  [15] *Computer Parts, PC Components, Laptop Computers, LED LCD TV, Digital
19  Cameras and more - Newegg.com*, http://kb.newegg.com/Policies/Article/1167 (last visited
     Mar. 19, 2015).
20  [16] *Is NVIDIA Becoming the Intel of Graphics Cards? (AMD, NVDA)*,
     http://www.fool.com/investing/general/2015/02/27/is-nvidia-becoming-the-intel-of-graphics-
21  cards.aspx (last visited Mar. 19, 2015).
22  [17] *Nvidia Corp, Form 10-Q*, http://files.shareholder.com/downloads/AMDA-
     1XAJD4/4063444419x0xS1045810-14-188/1045810/filing.pdf, 30 (last visited Mar. 19,
23  2015) (stating that Nvidia *increased* its advertising and marketing expenses by $5.5 million
     in 2014).
24  [18] Minor differences in ancillary features and price aside, all of the products listed above
25  have the same core features (*e.g.*, they are all "Powered by NVIDIA GeForce GTX 970
     GPU") and were marketed by Defendants as being "Integrated with industry's best 4GB
26  GDDR5 memory 256-bit memory." *See GIGABYTE - Graphics Card - NVIDIA - PCI
     Express Solution - GeForce 900 Series - GV-N970IX-4GD (rev. 1.0)*,
27  http://www.gigabyte.com/products/product-page.aspx?pid=5392#ov (last visited Mar. 19,
     2015); *GIGABYTE - Graphics Card - NVIDIA - PCI Express Solution - GeForce 900 Series -
28  GV-N970WF3-4GD*, http://www.gigabyte.com/products/product-page.aspx?pid=5352#ov
     (last visited Mar. 19, 2015); *GIGABYTE - Graphics Card - NVIDIA - PCI Express Solution -*

Excluded from the Class and are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

50. **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals and other entities. Class members can be easily identified through Defendants' or their agents' records.

51. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

> a) Whether Defendants intentionally misrepresented that their GTX 970 graphics cards had "4GB" (*i.e.*, 4 gigabytes) of video memory;
>
> b) Whether Defendants' conduct described herein was willful;
>
> c) Whether Defendants' conduct described herein constitutes a violation of California's Consumers Legal Remedies Act (Cal. Civ. Code. §§ 1750, *et seq.*);
>
> d) Whether Defendants' conduct described herein constitutes a violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et*

---

*GeForce 900 Series - GV-N970IXOC-4GD*, http://www.gigabyte.com/products/product-page.aspx?pid=5252#ov (last visited Mar. 19, 2015); *GIGABYTE - Graphics Card - NVIDIA - PCI Express Solution - GeForce 900 Series - GV-N970WF3OC-4GD (rev. 1.0/1.1)*, http://www.gigabyte.com/products/product-page.aspx?pid=5212#ov (last visited Mar. 19, 2015); *GIGABYTE - Graphics Card - NVIDIA - PCI Express Solution - GeForce 900 Series - GV-N970G1 GAMING-4GD (rev. 1.0/1.1)*, http://www.gigabyte.com/products/product-page.aspx?pid=5209#ov (last visited Mar. 19, 2015).

*seq.*);

e)    Whether Defendants' conduct described herein constitutes a violation of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*);

f)    Whether Defendants' conduct described herein constitutes fraud in the inducement;

g)    Whether Defendants' conduct described herein constitutes a breach of express warranty; and

h)    Whether Defendants' conduct has caused them to be unjustly enriched.

52.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

53.    **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

54.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect the members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

55.    **Superiority**: This class action is also appropriate for certification because

1   class proceedings are superior to all other available methods for the fair and efficient

2   adjudication of this controversy and joinder of all members of the Class is impracticable. The

3   damages suffered by the individual members of the Class will likely be small relative to the

4   burden and expense of individual prosecution of the complex litigation necessitated by

5   Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual

6   members of the Class to obtain effective relief from Defendants' misconduct. Even if

7   members of the Class could sustain such individual litigation, it would not be preferable to a

8   class action because individual litigation would increase the delay and expense to all parties

9   due to the complex legal and factual controversies presented in this Complaint. By contrast, a

10   class action presents far fewer management difficulties and provides the benefits of single

11   adjudication, economy of scale, and comprehensive supervision by a single court. Economies

12   of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

13        56.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and

14   "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the Class)**

       57.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

       58.    The Consumers Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct as described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

       59.    Defendants are "persons" as defined by Cal. Civ. Code § 1761(c).

       60.    Plaintiff and each member of the Class are "consumers" as defined by Cal. Civ. Code § 1761(a).

       61.    Defendants' GTX 970 graphics cards are "goods" within the meaning of Cal. Civ. Code § 1761(a).

       62.    As described herein, Defendants have engaged in deceptive practices,

unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750 *et seq.*, to the detriment of Plaintiff and the Class.

63.     Defendants, acting with knowledge, intentionally and unlawfully brought harm upon Plaintiff and the Class by representing that the GTX 970 graphics cards had "4GB" (*i.e.*, 4 gigabytes) of "GDDR5" video memory when in fact Defendants' representations were false because the GTX 970 graphics cards only contained 3GB (*i.e.*, 3 gigabytes) of GDDR5 video memory.

64.     Specifically, Defendants violated Cal. Civ. Code § 1750 in at least the following respects:

        a.     In violation of § 1770(5), by representing that the GTX 970 graphics cards had characteristics, ingredients, uses, benefits, or quantities which they did not have;

        b.     In violation of § 1770(7), by representing that the GTX 970 graphics cards were of a particular standard, quality, or grade of which they are not; and

        c.     In violation of § 1770(9), by advertising the GTX 970 graphics cards with the intent not to sell their goods as advertised.

65.     Defendants' unfair or deceptive acts or practices were capable of deceiving a substantial portion of the purchasing public.

66.     Defendants knew that they were unable or unwilling to manufacture, distribute, and sell graphics cards with the advertised specifications at the time that they made representations claiming that the GTX 970 graphics cards had "4GB" (*i.e.*, 4 gigabytes) of "GDDR5" video memory. Specifically, Defendants contracted together, shared technical materials and testing data, and would have known that the GTX 970 graphics cards did not have "4GB" of "GDDR5" video memory as advertised.

67.     Once Defendants made specific public representations regarding the specifications of the GTX 970, Defendants were under a duty to Plaintiff and the Class to disclose their inability or unwillingness to manufacture, distribute, and sell graphics cards as

advertised because:

    a.    Defendants were in a superior position to know the true state of facts about the specifications of the GTX 970 graphics cards;

    b.    Plaintiff and the Class could not reasonably have been expected to learn or discover that Defendants did not manufacture the GTX 970 graphics cards with the advertised specifications;

    c.    Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that the GTX 970 graphics cards did not contain the memory specifications as advertised; and

    d.    Defendants knew, and in fact intended, that Plaintiff and the Class members would rely on Defendants' representations regarding the graphic cards' specifications in choosing whether or not to purchase the GTX 970 graphics cards.

68.    In failing to disclose their inability or unwillingness to manufacture and sell graphics cards with the advertised specifications, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

69.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class, including that the GTX 970 graphics cards did not have "4GB" (*i.e.*, 4 gigabytes) of "GDDR5" video memory, are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the GTX 970 graphics cards.

70.    Plaintiff and the Class reasonably expect their graphics cards to have the specifications equal to what Defendants advertised based upon Defendants' representations found online, on the graphics cards' packaging, and listed within the products' names. Plaintiff's and Class members' expectations were reasonable under the circumstances.

71.    The specifications of the GTX 970 graphics cards are and were material selling points of Defendants' graphics cards, and primary reasons to purchase the products.

72.    Plaintiff and members of the Class relied on the representations made by

Defendants about the specifications of the GTX 970 graphics cards when purchasing the products.

73.     Defendants' false representations about the specifications of the GTX 970 graphics cards was an act likely to mislead Plaintiff and the members of the Class acting reasonably under the circumstances.

74.     Through the misrepresentations and omissions detailed herein, Defendants wrongfully induced Plaintiff and the other members of the Class to purchase the GTX 970 graphics cards when they otherwise would not have purchased the graphics cards or would have only agreed to purchase them at a lower price.

75.     As a direct and proximate result of Defendants' violation of Cal. Civ. Code §§ 1750, *et seq.*, Plaintiff and each Class member have suffered harm in the form of paying monies to Defendants without receiving the entire benefit of his or her bargain.

76.     Plaintiff and the members of the Class are likely to purchase graphics cards with Nvidia technology in the future and require an injunction requiring Nvidia and Gigabyte to truthfully advertise their graphics cards' specifications.

77.     Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf of the Class, seeks an injunction requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, and all other appropriate remedies for their violations of the CLRA. For the sake of clarity, Plaintiff explicitly disclaims any claim for damages under the CLRA at this time.

## SECOND CAUSE OF ACTION
### Violations of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of Plaintiff and the Class)

78.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

79.     California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

80.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria to be considered unfair competition.

81.     The specifications of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the specifications of a product is materially misleading.

82.     As described herein, Defendants have engaged in deceptive business practices, as defined by the UCL, by misrepresenting that the GTX 970 graphics cards had "4GB" (*i.e.*, 4 gigabytes) of "GDDR5" video memory.

83.     Defendants' representations were, in fact, false. Defendants' graphics cards do not actually have the advertised 4GB of "GDDR5" video memory. In particular, Defendants' GTX 970 graphics cards have only 3GB of "GDDR5" video memory, and 1GB of memory that exhibits degraded performance.

84.     Defendants have violated the fraudulent prong of the UCL by knowingly making false representations to consumers—including Plaintiff and the Class—regarding the amount and type of video memory the GTX 970 graphics card contain. These representations were made in an effort to convince consumers to purchase the GTX 970 graphics cards.

85.     Reasonable consumers are likely to be, and Plaintiff and the Class were, deceived by Defendants' misrepresentations about the specifications of the GTX 970 graphics cards.

86.     Defendants also violated the UCL's unfair prong by causing substantial injury to consumers through their fraudulent conduct described above. The injuries caused by Defendants' unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Given the information asymmetry between Defendants and consumers regarding the true specifications of the GTX 970 graphics cards, Defendants knew or had reason to know

1   that Plaintiff and the Class could not have reasonably known or discovered the falsity of

2   representations about the actual specifications of the GTX 970 graphics cards.

3       87.    Defendants' fraudulent and unfair conduct occurred during the marketing,

4   distribution, and sale of graphics card products, and therefore occurred in the course of

5   Defendants' business practices.

6       88.    Defendants' fraudulent and unfair conduct directly and proximately caused

7   Plaintiff and the Class actual monetary damages in the form of the price paid for their GTX

8   970 graphics cards —typically between $300 and $500—or, at least, the difference between

9   what they paid for the graphics cards and their actual value.

10      89.    But for Defendants' conduct as described herein, Plaintiff and the Class would

11  not have purchased the GTX 970 graphics cards, or would have paid substantially less for

12  them.

13      90.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1)

14  requiring Defendants to cease the unfair practices described herein; (2) requiring Defendants

15  to restore to Plaintiff and each Class member any money acquired by means of unfair

16  competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to

17  Cal. Code Civ. Proc. § 1021.5.

18                          **THIRD CAUSE OF ACTION**
                         **Violation of False Advertising Law**
19                    **Cal. Bus. & Prof. Code §§ 17500 *et seq.***
                        **(On Behalf of Plaintiff and the Class)**
20
21      91.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

22      92.    California's False and Misleading Advertising Law ("FAL") prohibits

23  corporations from intentionally disseminating advertisements for products or services that are

24  "unfair, deceptive, untrue, or misleading." Cal. Bus. & Prof. Code §17500.

25      93.    As depicted in Figures 1–6 and detailed throughout this Complaint,

26  Defendants have disseminated unfair, deceptive, untrue, and misleading advertisements that

27  claim the GTX 970 graphics cards have "4GB" (*i.e.*, 4 gigabytes) of "GDDR5" video

28  memory. As detailed in Section II above, these advertisements are false and misleading and

1    were designed to convince consumers to purchase the graphics cards. In short, Defendants'

2    advertisements are false because they advertise specifications that Defendants knew the

3    graphics cards did not have.

4          94.    A reasonable person is likely to be deceived by Defendants' advertisements.

5          95.    Defendants knew or should have known when creating and disseminating

6    these advertisements that they contained materially false and misleading information. As the

7    developers, engineers, testers, and distributors of the GTX 970 graphics cards, Defendants

8    are intimately familiar with the graphics cards' specifications. Thus, it's reasonable to infer

9    that Defendants are (and were) aware of the fact that the GTX 970 graphics cards did not

10   have the 4 gigabytes of GDDR5 video memory as advertised.

11         96.    Defendants' conduct directly and proximately caused Plaintiff and the Class

12   actual monetary damages in the form of the price paid for the GTX 970 graphics cards—

13   typically between $300 and $500—or, at least, the difference between what they paid for the

14   graphics cards and their actual value.

15         97.    Plaintiff seeks an order (1) requiring Defendants to cease the false advertising

16   practices described herein; (2) requiring Defendants to restore to Class members any money

17   acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and

18   attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

19                          **FOURTH CAUSE OF ACTION**
                             **Fraud in the Inducement**
20                         **(On Behalf of Plaintiff and the Class)**

21         98.    Plaintiff incorporates by reference the foregoing allegations as if fully stated

22   herein.

23         99.    As described with particularity herein, Defendants have designed, overseen,

24   and disseminated false and misleading advertisements for their GTX 970 graphics cards. This

25   conduct includes, but is not limited to, Defendants promoting and advertising that the GTX

26   970 graphics cards had "4GB" (*i.e.*, 4 gigabytes) of "GDDR5" video memory when

27   Defendants knew or should have known that the graphics cards did not have 4 gigabytes of

28   GDDR5 video memory.

100. By committing the acts alleged in this Complaint, Defendants have designed and disseminated untrue and misleading statements through fraudulent advertising in order to sell or induce members of the public to purchase the GTX 970 graphics cards.

101. Memory specifications are material terms of any transaction for a graphics card because they directly affect a consumer's choice of, or conduct regarding, whether to purchase a particular graphics card. Any deception of fraud related to the memory specifications for a graphics card is materially misleading.

102. Misrepresentations regarding a graphic card's memory specifications are likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

103. Defendants knew or should have known of the falsity of the representations they made regarding the memory specifications of the GTX 970 graphics cards.

104. Defendants intended that the deceptive and fraudulent misrepresentations they made would induce a consumer to rely and act by purchasing their GTX 970 graphics cards.

105. Defendants charged and collected from Plaintiff and members of the Class monies for a product that did not meet the advertised specifications. Accordingly, Plaintiff and the members of the Class have suffered injury in fact and lost money in justifiable reliance on Defendants' misrepresentations of material fact.

106. In deceiving Plaintiff and the Class by misrepresenting the actual memory specifications of the GTX 970 graphics cards, and inducing Plaintiff and the Class to proffer payment based on those misrepresentations, Defendants have engaged in and have, and/or continue to have, direct knowledge of fraudulent practices designed to mislead and deceive consumers.

107. Plaintiff and the Class have suffered harm as a proximate result of Defendants' violations of law and wrongful conduct.

108. Plaintiff, on behalf of himself and the Class, seeks damages from Defendants' unlawful conduct.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranties**
**(On Behalf of Plaintiff and the Class)**

109.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

110.    Pursuant to California Commercial Code § 2313, Defendants' sale of their GTX 970 graphics cards included express warranties created by Defendants' affirmations of fact, made through the marketing materials and advertisements displayed on retailers' websites, on the graphics cards' packaging, and in the graphics cards' product model number.

111.    Defendants' express warranties included affirmations of fact and promises that the GTX 970 graphics cards would conform to the memory specifications represented on retailers' websites, on the graphics cards' packaging, and in the graphics cards' product model number.

112.    Specifically, Defendants' statements included affirmations of fact and promises that the GTX 970 graphics cards had "4GB" (*i.e.*, 4 gigabytes) of "GDDR5" video memory. As such, Defendants expressly warranted that the GTX 970 graphics cards would conform to such specifications.

113.    Defendants, under the California Commercial Code, were obligated to deliver the GTX 970 graphics cards as advertised, promised, and/or described.

114.    Defendants breached their express warranties because the graphics cards did not conform to the memory specifications advertised on retailers' websites, on the graphics cards' packaging, and in the graphics cards' product model number.

115.    Defendants' failure to provide Plaintiff and the Class members with graphics cards that conform to advertised memory specifications constitutes a breach of the express warranty to include such memory specifications with the GTX 970 graphics cards.

116.    Plaintiff and the members of the Class relied on Defendants' affirmations, promises, and descriptions when they purchased the GTX 970 graphics cards. But for Defendants' affirmations and promises, Plaintiff and the Class would not have purchased the GTX 970 graphics cards, or would have only agreed to purchase them at a lower price. As

such, Defendants' breach of express warranties injured Plaintiff and the Class because they purchased a product of diminished value—graphics cards that do not have the memory specifications as described by Defendants' affirmations and promises.

117. Because the graphics cards that Plaintiff and the Class members received did not have the memory specifications as expressly warranted and represented by Defendants, Plaintiff and the members of the Class have been damaged insofar as they did not receive the benefit of their bargain.

118. By serving this Complaint, Plaintiff and the Class hereby give Defendants notice that they have breached the express warranties described above. Plaintiff and the members of the Class request maximum damages as provided by the California Commercial Code.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

119. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

120. Plaintiff and the Class have conferred a benefit upon Defendants in the form of the money Defendants received from them for the purchase of the GTX 970 graphics cards, which did not have the memory specifications as Defendants promised.

121. Defendants appreciate and/or have knowledge of the benefits conferred upon them by Plaintiff and the Class.

122. Under principles of equity and good conscience, Defendants should not be permitted to retain the money obtained from Plaintiff and the members of the Class, which Defendants have unjustly obtained as a result of their deceptive and misleading advertising.

123. Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendants have retained as a result of the unlawful and/or wrongful conduct alleged herein.

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff Jason Doerrer on behalf of himself and the Class

3 respectfully requests that the Court enter an order:

4      A.      Certifying this case as a class action on behalf of the Class defined above,

5 appointing Jason Doerrer as representative of the Class, and appointing his counsel as class

6 counsel;

7      B.      Declaring that Defendants' actions, as set out above, violate the CLRA (Cal.

8 Civ. Code §§ 1750, *et seq.*); UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); the FAL (Cal.

9 Bus. & Prof. Code §§ 17500, *et seq.*), and constitute fraud in the inducement, breach of

10 express warranties, and unjust enrichment;

11      C.      Awarding damages, including statutory and punitive damages where

12 applicable, to Plaintiff and the Class in an amount to be determined at trial;

13      D.      Awarding Plaintiff and the Class their reasonable litigation expenses and

14 attorneys' fees;

15      E.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

16 allowable;

17      F.      Awarding such other injunctive and declaratory relief as is necessary to

18 protect the interests of Plaintiff and the Class; and

19      G.      Awarding such other and further relief as the Court deems reasonable and just.

20

21

22           *           *           *

23

24

25           *           *           *

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated:  March 19, 2015                    **JASON DOERRER**, individually and on
behalf of all others similarly situated,

By:  /s/ Samuel M. Lasser
One of Plaintiff's Attorneys

Samuel M. Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Amir C. Missaghi*
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought

Attorneys for Plaintiff and the Putative Class